IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GLEN ADKINS, JR.,                        )
                                         )
                    Petitioner,          )
                                         )
         v.                              )        Case No. 23-3235-JWL
                                         )
D. HUDSON, Warden, USP-Leavenworth,      )
                                         )
                    Respondent.          )
                                         )
_____ )

## MEMORANDUM AND ORDER

Petitioner has filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, in which he claims that he is entitled to receive certain additional credits against his sentence under the First Step Act (FSA).  For the reasons set forth below, the Court rejects petitioner's argument that he should receive credits at a higher rate retroactively after satisfying the statutory requirements for that rate.  The Court further rejects petitioner's equal protection argument.  The Court requests additional briefing, however, concerning when petitioner actually satisfied the statutory requirements for earning credits at the higher rate, as discussed below, and the petition therefore remains pending.

I.    **Background**

Petitioner is presently serving a federal sentence of 300 months at the United States Penitentiary in Leavenworth, Kansas, within this judicial district.  His anticipated release date is November 17, 2032.  At his initial determination and since that date, petitioner has

been assessed by the Bureau of Prisons (BOP) as having a low or minimum risk of recidivism. Under the FSA, petitioner has been awarded 10 days of Earned Time Credits (ETCs) for every 30 days of participation in approved evidence-based recidivism reduction (EBRR) programming during the period from December 21, 2018, to July 17, 2019; and he has been awarded 15 days of ETCs for every 30 days of EBRR programming after July 17, 2019.

Petitioner filed the instant petition on October 20, 2023, in which he claims that he should have received ETCs at the rate of 15 days of ETCs per 30 days of programming in which he has participated since December 21, 2018, and that he is therefore entitled to an additional 5 days of ETCs per 30 days of programming for the period from December 21, 2018, to July 17, 2019. Respondent filed an answer to the petition, petitioner filed a traverse, and then each party was permitted to file[1] and did file an additional brief.

## II.   **Retroactive Receipt of ETCs**

The FSA, which took effect on December 21, 2018, charged the Attorney General to develop a system by which the BOP would assess each prisoner's risk of recidivism and provide incentives and rewards for each prisoner's participation in EBRR programming. *See* 18 U.S.C. § 3632(a). ETCs represent one such reward. *See id.* § 3632(d)(4). Unless a prisoner is ineligible because he is serving a sentence for one of many specified offenses, *see id.* § 3632(d)(4)(D), a prisoner may receive credits to be applied toward time in

---

[1]   Thus, contrary to petitioner's assertion, the Court did authorize the filing of respondent's sur-reply brief.

prerelease custody or supervised release, *see id.* § 3632(d)(4)(C).  Most pertinent to this case is the FSA's provision that an eligible prisoner (such as petitioner) shall receive 10 days of ETCs for every 30 days of successful participation in EBRR programming; but "[a] prisoner determined by the [BOP] to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of [ETCs] for every 30 days of successful participation in [EBRR] programming." *See id.* § 3632(d)(4)(A).

It is undisputed that the BOP has awarded petitioner ETCs at the higher 15-day rate for EBRR programming in which petitioner participated after July 17, 2019.  Petitioner claims by this petition that he should be awarded ETCs at the 15-day rate from the beginning of his participation in FSA programming, starting on December 21, 2018.  In essence, petitioner argues that once he received the required second consecutive minimum or low assessment, he should have been awarded retroactively the additional 5 days of ETCs per 30 days of programming during the earlier period.  Respondent argues in opposition to the petition that the BOP has correctly calculated petitioner's ETCs, based on the BOP's interpretation of the FSA that allows for application of the 15-day ETC rate only for the period after the prisoner's second consecutive minimum or low assessment.

The Court rejects petitioner's argument that the FSA allows him to be awarded ETCs at the higher 15-day rate for the period prior to his second consecutive minimum or low assessment.  The statute does not state that a prisoner shall receive ETCs at the higher rate during all periods in which had a low or minimum risk score.  Rather, the FSA provides that a prisoner shall "earn" credits at the 10-day rate, and that a prisoner who has had two

consecutive low or minimum assessments shall "earn" ETCs at the 15-day rate, *see id.* § 3632(d)(4)(A), and the use of the word "earn" (as used in its ordinary meaning) means that a prisoner is entitled to ETCs at the higher rate only for the period after that second assessment (during which period the prisoner is "earning" those credits).

Courts that have addressed this issue have consistently held, based on the plain meaning of the statute and the weight of authority, that the BOP's interpretation is correct and that a prisoner is not entitled to receive ETCs at the higher rate for the period prior to the second consecutive low or minimum assessment. *See Hulse v. Lemaster*, 2024 WL 439445, at *1-2 (E.D. Ky. Jan. 16, 2024); *Horning v. Keyes*, 2023 WL 7279261, at *2 (W.D. Wis. Nov. 3, 2023); *Khatiwala v. Rickard*, 2023 WL 6143509, at *4-5 (M.D. Pa. Sept. 20, 2023); *Lallave v. Spaulding*, 2023 WL 5732702, at *2 (M.D. Pa. Aug. 9, 2023); *Purdy v. LeJeune*, 2023 WL 4561334, at *13 n.10 (D. Minn. Sept. 17, 2023) (report and recommendation), *adopted*, 2023 WL 5039748 (D. Minn. Aug. 8, 2023); *Jun v. Eischen*, 2023 WL 5917739, at *10-13 (D. Minn. June 30, 2023) (report and recommendation), *adopted*, 2023 WL 5899128, at *1 (D. Minn. Sept. 11, 2023); *Huihui v. Derr*, 2023 WL 4086073, at *3 (D. Haw. June 20, 2023); *Laksonen v. Eischen*, 2023 WL 2072434, at *2-3 (D. Minn. Apr. 25, 2023).  Petitioner has not cited any case in which the court applied the contrary interpretation that he espouses,[2] and neither has the Court located any such

---

[2]  In the cases cited by petitioner, the courts did not address this issue of whether the 15-day ETC rate may apply for the period prior to the prisoner's second consecutive low or minimum assessment.  *See Brodie v. Pliler*, 2022 WL 16751908 (S.D.N.Y. Nov. 7, 2022); *Stewart v. Snider*, 2022 WL 2032305 (N.D. Ala. May 10, 2022) (report and recommendation), *adopted*, 2022 WL 2019965 (N.D. Ala. June 6, 2022); *see also* Continued…

authority favoring petitioner's interpretation.  This Court therefore follows the unanimous position of other courts and applies the plain meaning of the FSA, in accord with the BOP's interpretation.  Accordingly, the Court rejects petitioner's claim for additional ETCs dating back to December 21, 2018.[3]

### III.    Trigger Date for Earning ETCs at the 15-Day Rate

Thus, as discussed, petitioner is entitled to receive ETCs at the higher 15-day rate only for his participation in programming after the trigger date when he satisfied the FSA's requirements for earning at that rate.  The parties appear to agree that the BOP has credited petitioner with ETCs at the 15-day rate for his participation since July 17, 2019.  It is not clear, however, that that is the correct date, in light of an argument made by respondent in his answer.

As noted above, the FSA states that "[a] prisoner determined by the [BOP] to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of [ETCs] for every 30 days of successful participation in [EBRR] programming."  *See id.* § 3632(d)(4)(A).  The

---

*Laksonen*, 2023 WL 2072434, at *3 (noting that *Brodie* and *Stewart* did not address this issue and thus did not support the petitioner's claim for ETCs at the higher rate).

[3]  Even if the statute could be considered ambiguous (despite its plain language, as applied by this Court), this interpretation by the BOP in giving effect to Section 3632(d)(4)(A) is reasonable and thus would be entitled to *Chevron* deference.  *See Lopez v. Davis*, 531 U.S. 230, 242 (2001) (deferring to the BOP's reasonable interpretation of a statute).  Petitioner argues that the Court should not apply such deference because the Supreme Court may alter its jurisprudence on *Chevron* in a presently-pending case, but until any ruling is issued, this Court applies the governing, presently-applicable law of the Supreme Court.

applicable regulation essentially parrots that same language without elaboration.  *See* 28 C.F.R. § 543.42(c).  Nor does the relevant BOP Program Statement (attached to the supporting declaration submitted by respondent) elaborate on the statutory language.

In his answer, respondent argues that a total of three favorable recidivism score calculations are required before a prisoner may earn at the 15-day rate, including an initial "determination" and two consecutive "reassessments".  That position does not appear to comport with the language of the FSA, however.  The statute requires the BOP initially to "determine" a prisoner's recidivism risk at intake.  *See* 18 U.S.C. § 3632(a)(1).  The statute then requires the BOP to "reassess" that recidivism risk periodically.  *See id.* § 3632(a)(4). The use of the word "reassess" (instead of "assess") suggests that the initial "determination" constitutes a first "assessment" – which would mean that the requirement of two consecutive "assessments" for earning at the 15-day rate could refer to the initial determination and *one* reassessment.[4]  Respondent has not addressed this apparent tension between his position and the statute's use of "reassess".  Nor do the BOP regulation and program statement address that exact issue, and thus the BOP's official interpretation is not clear.

---

[4]  The FSA requires both that the prisoner has been "determined" by the BOP to be at a minimum or low risk of recidivating and that the prisoner has maintained a minimum or low risk over the prisoner's two most recent consecutive assessments; but it does not state that the two consecutive assessments must be separate from and cannot include the "determination" of a minimum or low risk.  *See* 18 U.S.C. § 3632(d)(4)(A).  Indeed, if a prisoner was initially determined to be at a higher risk but then achieves minimum or low risk scores in subsequent reassessments, the statute would appear to allow the prisoner to earn at the higher rate from the date of the second reassessment, with one of those two reassessments providing the necessary "determination" of the required risk level.

With respect to application of the statute to petitioner specifically, respondent has conceded that petitioner was initially determined to be at a minimum or low risk of recidivism and that petitioner has received only minimum or low risk assessments since then.  Neither respondent's answer nor the supporting declaration, however, identifies the exact dates of the BOP's risk assessments of petitioner (either his initial determination or any reassessment).  Rather, they refer to petitioner's "assessment periods" (although the FSA does not refer to such periods), with the first such period running from December 21, 2018, to January 18, 2019, and the second such period running from January 18, 2019, to July 17, 2019.  Those periods might indicate assessments performed on January 18, 2019, and July 17, 2019, in accord with the BOP's policy (noted within the supporting declaration) that a prisoner's initial risk determination is performed within 28 days of intake (or in this case, within 28 days of the effective date of the FSA) and reassessments are performed every 180 days.  Thus, it may be the case that petitioner has been permitted to earn ETCs at the 15-day rate since achieving the second of two consecutive favorable assessments (consisting of one initial determination and one reassessment) on July 17, 2019.  Again, however, it is not clear if that is indeed the case, in light of respondent's argument that *three* assessments or risk calculations are actually required in petitioenr's case before the 15-day rate may be triggered.

Accordingly, respondent is directed to file a supplemental brief on or before **March 15, 2024**, in which he addresses this issue.  Specifically, respondent should identify the dates of any recidivism risk assessments of petitioner, including his initial determination and any reassessments (attaching supporting evidence as necessary); state whether he

7

continues to rely on an interpretation of the FSA requiring a total of three assessments before the 15-day rate may be triggered; and if so, explain how that interpretation has been applied to petitioner and how that interpretation comports with the language of the FSA.

If petitioner is satisfied with respondent's explanation, he need not reply to respondent's supplemental brief; otherwise, any supplemental brief shall be filed by petitioner on or before **April 15, 2024**.  In any such brief, petitioner shall address only this issue whether July 17, 2024, represents the proper trigger date for his earning ETCs at the 15-day rate under the language of the FSA.  The petition shall remain pending until the Court may consider such supplemental briefing.


### IV.    Equal Protection Argument

The Court also addresses petitioner's argument, first raised in his traverse, that the BOP's calculation of his ETCs using an automated calculation tool violates the Constitution's Equal Protection Clause because the BOP previously calculated ETCs manually.  Petitioner relies on a declaration submitted in an unrelated case in which a BOP official stated that the use of a manual calculation sometimes over-credited the prisoner, resulting in a windfall for the prisoner.  Petitioner thus argues that he has been treated differently from those prisoners with earlier release dates, whose ETC calculations were prioritized and thus performed manually (before implementation of the auto-calculation tool).

The Court rejects this claim, by which petitioner essentially argues that he should receive a windfall instead of a proper application of the FSA.  The BOP official has

submitted a declaration in this case in which she has clarified that the manual calculations resulted in both over-crediting and under-crediting for different inmates. Moreover, petitioner has not shown that a manual calculation would result in a windfall for him. Most significantly, earlier calculations were done manually because the auto-calculation tool had not yet been implemented, and after enactment of the FSA the BOP necessarily prioritized ETC calculations for prisoners with the earliest release dates (to make sure earned ETCs were applied to time in prerelease custody as warranted). Thus, petitioner has not shown (or even attempted to explain) how the BOP's different treatment of him (that is, use of the more-accurate auto-calculation tool) was not rationally related to a legitimate government interest, namely the prioritization of prisoners with earlier release dates and the creation of a more-efficient automated calculation tool. *See Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (setting forth the rational basis standard for equal protection claims). Petitioner has not cited any caselaw supporting his claim that he has suffered any equal protection violation. Accordingly, the Court rejects this claim.

IT IS THEREFFORE ORDERED BY THE COURT THAT the petition for habeas corpus under 28 U.S.C. § 2241 remains pending. Although the Court has rejected certain arguments by petitioner, the parties shall file supplemental briefs addressing the sole remaining issue of the proper trigger date for petitioner's earning ETCs at the 15-day rate, as discussed herein. Respondent shall file his supplemental brief on or before **March 15, 2024**; and petitioner shall any supplemental brief on or before **April 15, 2024**.

IT IS SO ORDERED.

Dated this 14th day of February, 2024, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge